# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:16-cr-051 |
| vs. | : | Judge Timothy S. Black |
| ERIC MICHAEL SCHUSTER, | : | |
| Defendant. | : | |

## ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS

This criminal case is before the Court on Defendant's motions to dismiss under the Speedy Trial Act and the Sixth Amendment (Docs. 75, 76, 82) and the parties' responsive memoranda (Docs. 79, 81, 83).

## I. BACKGROUND

On May 18, 2016, Defendant Eric Michael Schuster was charged in a three-count indictment with: production of child pornography, in violation of 18 U.S.C. § 2251(a), (e) (Count 1); receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2), (b)(1) (Count 2); and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4), (b)(2) (Count 3). (Doc. 14).

As charged, Count 1 carries a mandatory minimum of fifteen years imprisonment up to thirty years. 18 U.S.C. § 2251(e). Count 2 carries a mandatory minimum term of five years imprisonment up to twenty years. 18 U.S.C. § 2252(b)(1). Finally, Count 3 carries a maximum term of twenty years imprisonment. 18 U.S.C. § 2252(b)(2).

The charges in this case arose, as an initial matter, out of a federal investigation involving a website known as Playpen. (Doc. 34 at 2). Playpen served as an online

global forum for its nearly 215,000 registered users to access postings containing images and videos of child pornography, as well as forums dedicated to discussing how to perpetrate child abuse. (*Id.*)

Playpen operated on an anonymous network known as The Onion Router ("Tor"), thereby masking users' Internet Protocol ("IP") address. (*Id.*) However, with the assistance of a foreign law enforcement agency and its own investigations, the Federal Bureau of Investigations ("FBI") was able to trace the IP address of Playpen's host server to a company in North Carolina. (*Id.* at 3-4). In February 2015, federal agents seized the server in North Carolina and took it to Virginia, where the FBI assumed administrative control over Playpen. (*Id.*) Federal agents then obtained a search warrant from a U.S. Magistrate Judge in the Eastern District of Virginia, which warrant authorized agents to use a Network Investigative Technique ("NIT") to identify Playpen users (the "NIT warrant"). (*Id.* at 4). The investigation ultimately resulted in the identification of numerous suspected Playpen users across the country, including Defendant Schuster.

In August 2015, the FBI obtained a search warrant from a U.S. Magistrate Judge in the Southern District of Ohio, authorizing the search of Defendant's home and seizure of his computers and electronics. (Doc. 1-1 at 2-3). Forensic review of the seized items revealed the images and videos that give rise to the charges in the instant case. (*Id.*)

After commencement of the case, Defendant filed a motion to suppress the evidence seized from his home. (Doc. 29). The Court held oral arguments on the motion and, in March 2017, issued a decision denying the motion. (Doc. 34). Defendant then proceeded to file additional motions, which motions he later withdrew, then refiled in

2

part, including a motion requesting a *Franks* hearing. (Docs. 40-43, 46). Briefing on the motion was stayed, however, as Defendant sought to obtain new counsel, and time remained tolled in the interim. (*See*, *e.g.*, Not. Order, Aug. 29, 2017). The Court appointed new defense counsel in October 2017, and permitted counsel time to review the discovery, confer with his client and opposing counsel, and consider how best to proceed in the case. (Doc. 48; Min. Entry & Not. Order, Oct. 5. 2017).

After the appointment of new counsel and Defendant's receipt of additional discovery, the Court next conferred with the parties in May 2018, at which time Defendant advised of his intent to file additional motions. (Min. Entry, May 10, 2018). The Court resolved an *ex parte* motion for CJA services in June 2018, and also conferred with counsel again in June and September 2018, throughout which Defendant waived speedy trial time and requested further continuances. (Docs. 49-52; Min. Entry & Not. Order, Jun. 13, 2018; Not. Order, Sep. 20, 2018).

On October 25, 2018, Defendant filed three pretrial motions: a motion for reconsideration of the Court's prior Order denying suppression (Doc. 53); a second motion to suppress (Doc. 54); and a revised motion for a *Franks* hearing (Doc. 55). After granting several extensions, the motions were briefed in April 2019. (Doc. 56-66).

At and shortly after the time the motions were briefed, however, there were cases pending before the Sixth Circuit, which cases involved suppression and *Franks* issues relating to the same NIT warrant at the heart of Defendant's pending motions. *See United States v. Jones*, No. 18-3743 (6th Cir., filed Aug. 9, 2018); *United States v. Bateman*, No. 18-3977 (6th Cir., filed Oct. 11, 2018); *United States v. Collard*, No. 19-

3

2151/2153 (6th Cir., filed Oct. 7, 2019). Thus, the Court, after conferring informally with the parties, opted to defer action on Defendant's pretrial motions pending the resolution of the appellate cases, which cases were ultimately decided on June 27, 2019, December 23, 2019, and February 25, 2021, respectively. Additionally, by March 2020, the COVID-19 pandemic had caused disruption to court calendars across the country.

Nevertheless, the Court held a status conference to touch base with the parties on December 3, 2020. (Min. Entry, Dec. 3, 2020). At that time, the Court was advised that Defendant intended to seek supplemental discovery, which request may result in the need to file a motion to compel. (*Id.*) Defendant further represented that the supplemental discovery could directly impact his other pending motions (Docs. 53-55) and prompt amended filings. (*Id.*) Thus, it was decided that the pending pretrial motions would be held in abeyance until the discovery issue was resolved. (Min. Entry, Dec. 3, 2020). The Court specifically noted that time remained tolled by the pending pretrial motions. (*Id.*)

As Defendant anticipated, his request for the Government to provide supplemental discovery led to the filing of a motion to compel on December 21, 2020 (Doc. 68), with a response in opposition and reply filed by February 21, 2021 (Docs. 69, 70). The Court concluded that Defendant should be heard on the motion for discovery, but did not immediately schedule a hearing, nor has the hearing yet occurred. Defendant also filed a motion for bond on August 9, 2021. (Doc. 71).[1]

---

[1] The filing of Defendant's motion for bond coincided with a request for the Court to approve a third-party medical evaluation for Defendant. Thus, the Court assumed (perhaps mistakenly) that its approval of the evaluation resolved the concern that prompted Defendant to seek bond.

On August 31, 2022, Defendant filed a motion to dismiss on speedy trial grounds, which motion he later amended on September 19, 2022. (Docs. 75, 76).[2] The motion was briefed by December 2, 2022. (Doc. 81). On April 3, 2023, Defendant filed a second motion to dismiss (Doc. 82), which prompted a response in opposition being filed on April 24, 2023 (Doc. 83). As no new arguments were raised in the response in opposition, the Court advised defense counsel that it would issue a decision on the motion and that no further briefing was required.

## II. STANDARD OF REVIEW

### A. Dismissal for Speedy Trial Act Violations

The Speedy Trial Act provides that, subject to periods of exclusion, the trial of a defendant who has pleaded not guilty to a charge brought in an information or indictment "shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant … [appears before] the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1), (h).

In the event that "a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be

---

[2] The Court did not strike the first motion to dismiss because it included an exhibit, which exhibit Defendant references but does not include in the amended filing. (*See* Docs. 75, 76). That said, the Court takes issue with the exhibit and defense counsel's false claims regarding the content of the exhibit and this Court's work product in criminal cases. Specifically, defense counsel makes the bold assertion that this Court has, according to the attached exhibit, issued only six Orders in criminal cases in the last five years and none in the prior twelve months. This is patently false. This Court issued numerous substantive written criminal Orders in the year prior to counsel's motion, and dozens more over the course of the several years counsel cites. Indeed, counsel's own exhibit (which is in itself inaccurate) belies his own assertion. This Court would have expected better of experienced defense counsel.

5

dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2). Defendant carries the burden of proof as to the motion. *Id.*

"[I]f a meritorious and timely motion to dismiss is filed, the district court must dismiss the charges, though it may choose whether to dismiss with or without prejudice." *Zedner v. United States*, 547 U.S. 489, 499 (2006). In determining whether to dismiss with or without prejudice, "the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice." 18 U.S.C. § 3162(a)(2).

### B. Dismissal for Sixth Amendment Speedy Trial Violation

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial …." U.S. Const. amend. VI.

To determine whether a defendant has been denied his Sixth Amendment right to a speedy trial, the Court must consider four factors: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertions of his right; and (4) prejudice to the defendant. *United States v. Young*, 657 F.3d 408, 414 (6th Cir. 2011) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). In contrast to the remedies available for violation of the Speedy Trial Act, "the proper remedy for a violation of a defendant's constitutional speedy-trial rights is dismissal of the indictment with prejudice." *Id.* at 413.

### III. ANALYSIS

Defendant seeks dismissal of the Indictment with prejudice, arguing that the delay since commencement of this case has resulted in violation of the Speedy Trial Act and

6

has further deprived him of his Sixth Amendment right to a speedy trial. (Docs. 76, 82). The Government opposes both motions. (Docs. 79, 83).

As to the motion to dismiss for violation of the Speedy Trial Act, the Government argues that Defendant's pending motions have continued to toll time, regardless of any delay in scheduling a hearing. (Doc. 79 at 6). As to the motion to dismiss under the Sixth Amendment, the Government argues that the vast majority of time that has elapsed in this case is attributable to Defendant himself, and that any remaining delay does not warrant dismissal. (*Id*. at 7-13). Moreover, the Government argues that the delay arises from a culmination of factors, none of which include bad faith, and that Defendant has not been prejudiced by the elapsed time. (*Id*.)

As stated more fully below, the Court finds no violation of the Speedy Trial Act and, therefore, dismissal is not warranted. Moreover, the Court finds that there has been no violation of Defendant's Sixth Amendment right to a speedy trial.

**A. The Speedy Trial Act**

The Speedy Trial Act requires that trial commence within seventy-days of either the filing of the indictment or a defendant's initial appearance, whichever occurs later. 18 U.S.C. § 3161(c)(1). However, the Act excludes certain periods of time from that seventy-day computation. 18 U.S.C. § 3161(h).

> Some of these delays are excludable only if the district court makes certain findings enumerated in the statute[, pursuant to 18 U.S.C.] § 3161(h)(7). Other delays are automatically excludable, *i.e.,* they may be excluded without district court findings. … [S]ubsection (h)(1) requires the automatic exclusion of 'any period of delay resulting from other proceedings concerning the defendant, including but not

7

>limited to' periods of delay resulting from [(h)(1)'s] eight enumerated subcategories of proceedings.

*Bloate v. United States*, 559 U.S. 196, 203 (2010).

Relevant here, 18 U.S.C. § 3161(h)(1)(D) provides for the automatic exclusion of "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion…." Notably, "the phrase 'or other prompt disposition' … does not imply that only 'reasonably necessary' delays may be excluded between the time of filing of a motion and the conclusion of the hearing thereon." *Henderson v. United States*, 476 U.S. 321, 329-30 (1986). Further, "the filing of a pretrial motion falls within [(h)(1)'s automatic exclusion] provision irrespective of whether it actually causes, or is expected to cause, delay in starting a trial." *United States v. Tinklenberg*, 563 U.S. 647, 650 (2011).[3]

Also relevant is 18 U.S.C. § 3161(h)(1)(H), which provides for the automatic exclusion of "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." The Court "has a motion 'under advisement' … from the time the court receives all the papers it reasonably expects[.]" *Henderson*, 476 U.S. at 329.

---

[3] In *Tinklenberg*, the Supreme Court held that 18 U.S.C. § 3161(h)(1)(D)'s automatic exclusion applies to any pretrial motions, irrespective of whether the motion caused or was expected to cause actual delay of the trial. 563 U.S. at 650. The Supreme Court explained that its holding was consistent with virtually all lower courts and that the interpretation by "the lower courts about the meaning of a statute of great practical administrative importance in the daily working lives of busy trial judges is itself entitled to strong consideration[.]" *Id*. at 657. Moreover, the Supreme Court rejected the 'actual delay' approach, noting that such an "interpretation would make the subparagraph (D) exclusion significantly more difficult to administer. And in doing so, it would significantly hinder the Speedy Trial Act's efforts to secure fair and efficient criminal trial proceedings." *Id*. (citing H.R.Rep. No. 93–1508, p. 15 (1974)).

8

Here, the Court has repeatedly made clear that time is tolled by the pending pretrial motions. (Docs. 53, 54, 55). Additionally, the Court and the parties were in agreement that the pretrial motions would remain pending until the discovery issue was resolved. (*See* Min. Entry, Dec. 3, 2020). And while the Court acknowledges that the motion for discovery was briefed in February 2021, a hearing has not yet occurred, nor has Defendant made any inquiry or request to schedule one.

Accordingly, time has been and remains tolled by not only Defendant's pending motion to compel, but also Defendant's other pending pretrial motions. Thus, no speedy trial violation has occurred.[4]

### B. Sixth Amendment Right to a Speedy Trial

Defendant further moves for dismissal, arguing that he has been denied a speedy trial under the Sixth Amendment. (Docs. 76, 82).

To determine whether Defendant has been deprived of his Sixth Amendment right to a speedy trial, the Court must consider: (1) the length of delay; (2) the reason for the delay; (3) Defendant's assertion of his right; and (4) prejudice to Defendant. *Barker*, 407 U.S. at 530. No one factor is a "necessary or sufficient condition to the finding of a

---

[4] Even if a technical violation had occurred (which it has not), under the circumstances presented in this case, the Court would have found any dismissal to be without prejudice, in consideration of the statutory factors. 18 U.S.C. § 3162(a)(2) (noting the following factors: (1) the seriousness of the offense; (2) the facts and circumstances that led to the dismissal; and (3) the impact of a re-prosecution on the administration of the Speedy Trial Act and on the administration of justice). Notably, the overwhelming seriousness of this offense (production, receipt, and possession of child pornography), and the lack of bad faith that contributed to the delay, would warrant a finding that any dismissal be without prejudice.

9

deprivation of the right of speedy trial … [but] [r]ather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id*. at 533.

As to the **first** factor, the length of the delay serves as a "triggering mechanism" and, if the length is not "presumptively prejudicial," the Court is not required to undertake the remainder of *Barker* analysis. *Doggett v. United States*, 505 U.S. 647, 651-52 (1992); *Barker*, 407 U.S. at 530–31. "[B]ecause of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." *Barker*, 407 U.S. at 530. The Sixth Circuit has held "delays over one year are 'uncommonly long.'" *United States v. Baugh*, 605 F. App'x 488, 491 (6th Cir. 2015) (citing *United States v. Bass,* 460 F.3d 830, 836 (6th Cir. 2006)). However, "in calculating the length of the delay, only those periods of delay attributable to the government or the court are relevant to [Defendant's] constitutional claim." *United States v. Howard*, 218 F.3d 556, 564 (6th Cir. 2000).

Here, such a delay exists. However, the delay does not automatically require dismissal of the case with prejudice, but serves only to trigger examination of the remaining factors. Thus, the Court must undertake an analysis of the remaining *Barker* factors.

The **second** factor is reason for the delay. The United States Supreme Court has made clear that "different weights are to be assigned to different reasons for delay." *Doggett*, 505 U.S. at 657. At its core, this factor seeks to determine "whether the government or the criminal defendant is more to blame for th[e] delay." *Vermont v. Brillon*, 556 U.S. 81, 90 (2009) (quoting *Doggett*, 505 U.S. at 651);

10

As the Supreme Court explained in *Barker*:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531. Naturally, "delay caused by the defense weighs against the defendant," which includes delay attributable to defense counsel. *Brillon*, 556 U.S. at 90-91 (citing *Coleman v. Thompson,* 501 U.S. 722, 753 (1991)).

Here, the vast majority of the time that has elapsed in this case is entirely attributable to Defendant. Indeed, it is only the period of time spanning from February 2021 until the filing of Defendant's motions to dismiss that cannot be squarely placed on Defendant's shoulders.

In that regard, the Court finds that the Government was neither negligent nor acting in bad faith. The Government has acted diligently in this case throughout, and is certainly not "more to blame" for the delay than Defendant. Moreover, the Court takes responsibility for not scheduling the motion to compel for hearing sooner. But the Court also did not act in bad faith, nor did the Court ignore any requests from Defendant in the interim period. Thus, while this factor weighs in Defendant's favor, such weight is slight at best. *See Barker*, 407 U.S. at 531 ("A more neutral reason such as negligence or overcrowded courts should be weighted less heavily…").

11

The **third** factor is Defendant's assertion of his right. "Whether and how a defendant asserts his right is closely related to the other factors," in that "[t]he strength of [a defendant's] efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences." *Barker*, 407 U.S. at 531. Stated simply, "[t]he more serious the deprivation, the more likely a defendant is to complain." *Id*. Thus, the Supreme Court has "emphasize[d] that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id*. at 532.

Here, Defendant's only assertion of his right to a speedy trial arises from the filing of his motions to dismiss. Indeed, quite the contrary to asserting his right to a speedy trial, Defendant has repeatedly caused further delays in these proceedings, contributing the overwhelming majority of the time that has elapsed. Accordingly, the third factor weighs against Defendant.

Finally, the **fourth** factor is any resulting prejudice to Defendant. In *Barker*, the Supreme Court explained that:

> Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect … [including]: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

*Barker*, 407 U.S. at 532.

Notably, "affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Doggett*, 505 U.S. at 656. The Sixth Circuit has elaborated, however, that "[i]n this circuit, '[w]hen the government prosecutes a case with reasonable diligence, a defendant who cannot demonstrate how his defense was prejudiced *with specificity* will not make out a speedy trial claim no matter how great the ensuing delay.'" *Young*, 657 F.3d at 418 (quoting *United States v. Howard,* 218 F.3d 556, 564 (6th Cir. 2000)) (emphasis in original); *see also United States v. Robinson*, 455 F.3d 602, 608 (6th Cir. 2006) (noting that, in the absence of particularized trial prejudice, "[s]horter delays [(*e.g.*, thirteen and one-half months versus six-years)] attributable to the government's negligence have been held not to give rise to a presumption of prejudice").

As to the "most serious" interest, Defendant asserts that the death of Special Agent Daniel Alfin "depriv[es] defense counsel of the opportunity to cross-examine the affiant on the details of the investigation either at the hearing on Mr. Schuster's Motion to Suppress or during the trial of this case." (Doc. 76 at 15-16). However, Agent Alfin was killed in the line of duty on February 2, 2021. *See Daniel Alfin*, FBI, available at: https://www.fbi.gov/history/wall-of-honor/daniel-alfin. In other words, Agent Alfin's death occurred <u>before</u> Defendant's motion to compel was even briefed. Thus, Defendant cannot argue that the delay attributable to the Court (*i.e.*, the time elapsing after the motion to compel) contributed in any way to the loss of a witness. Indeed, Defendant himself agreed that the motion to compel discovery needed to be heard before the other pending motions (and therefore, certainly, before any trial could commence). Thus, the

13

only delay that led up to Agent Alfin's death was the years of delay caused by Defendant, not the Court and certainly not the Government.

Defendant further asserts non-trial prejudice arising from his continued incarceration. Pretrial detention is a significant deprivation to any defendant. Here, the Court agrees the delay has contributed to Defendant's non-trial prejudice. However, as non-trial prejudice carries less weight than trial prejudice, the Court deems this fourth factor as weighing neither in favor of or against either party.

Having considered each of the *Barker* factors, the Court finds the delay has not deprived Defendant of his constitutional right to a speedy trial. Accordingly, dismissal under the Sixth Amendment is not warranted.

## IV. CONCLUSION

Based upon the foregoing, Defendant's motions to dismiss (Docs. 75, 76, 82) are **DENIED**.[5]

**IT IS SO ORDERED.**

Date: 5/5/2023

Timothy S. Black
United States District Judge

---

[5] The Court's earliest available dates for a hearing on the motion to compel discovery (Doc. 68) are May 22, 23, or 24, 2023. The Court will reach out to counsel to select a date and time specific.

14