UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:16-cr-051 |
| | : | |
| vs. | : | Judge Timothy S. Black |
| | : | |
| ERIC MICHAEL SCHUSTER, | : | |
| | : | |
| Defendant. | : | |

### ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION AND DISMISSING CASE WITH PREJUDICE

This criminal case is before the Court on Defendant's amended motion for reconsideration (Doc. 86)[1] and the Government's responsive memorandum (Doc. 87).

### I. BACKGROUND

On May 5, 2023, this Court issued its Order denying Defendant Eric Michael Schuster's motions to dismiss on speedy trial grounds. (Doc. 84). Defendant now seeks reconsideration of the Court's Order, arguing that denial of his motion to dismiss arose from a clear error in law and "created a situation of manifest injustice." (Doc. 86).

The Government opposes Defendant's motion for reconsideration, arguing that dismissal is unwarranted as no speedy trial violation has occurred. (Doc. 87). The Government further notes that it is not responsible for any delay in the proceedings resulting from Defendant's request for, and motion to compel, additional discovery. (*Id.*)

---

[1] The Court agreed to terminate Defendant's original motion for reconsideration (Doc. 85), in lieu of requiring defense counsel to file a motion to withdraw it. Accordingly, Doc. 85 is **TERMINATED as moot**.

## II. STANDARD OF REVIEW

"Although the Federal Rules of Criminal Procedure do not authorize motions for reconsideration, the Supreme Court determined many years ago that defendants may file them." *United States v. Mack*, 831 F. App'x 787 (6th Cir. 2020) (citing *United States v. Healy*, 376 U.S. 75, 78 (1964)). A motion for reconsideration in a criminal case is typically subject to the same standard as a civil motion to alter or amend a judgment under Fed. R. Civ. P. 59(e). *United States v. Hopewell*, No. 1:08-CR-065, 2009 WL 1026452, at *1 (S.D. Ohio Apr. 15, 2009) (collecting cases). Thus, to prevail on a motion for reconsideration, a criminal defendant must demonstrate: "(1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *United States v. Lewis*, No. 2:20-CR-0003(2), 2020 WL 2557196, at *1 (S.D. Ohio May 20, 2020) (quoting *Pegg v. Davis*, No. 2:09-CV-908, 2009 WL 5194436, at *1 (S.D. Ohio Dec. 22, 2009)).

## III. ANALYSIS

Defendant seeks reconsideration of the Court's Order denying dismissal, arguing that the pretrial delay in resolving Defendant's pending pretrial motions is unreasonable and has prejudiced the defense. (Doc. 86).

While the Court is prepared to grant Defendant's motion, the Court would be remiss in not clarifying that the arguments set forth by defense counsel, William R. Gallagher, Esq., rely on hyperbole, miscalculations, and knowing misstatements regarding the Court's actions and intent. Indeed, Mr. Gallagher similarly attacked the Court with flagrantly false statistics in Defendant's motion to dismiss, in response to

2

which the Court corrected the most egregious falsehood in a passing footnote. In the instant motion, Mr. Gallagher doubles-down on this tactic by arguing that the Court's rational in its prior Order was not merely erroneous but rather that it was dishonest. Thus, the Court feels compelled to respond briefly.

To start, Mr. Gallagher motion makes much of the fact that it took "almost 60 days" for the Court to hold a telephone status conference at Defendant's request. First, the status conference occurred 50 days after Defendant requested it—and while this may also seem lengthy, the Court takes issue with counsel needlessly appending a 20% inflation rate for the sake of optics. More to the point though, what Mr. Gallagher fails to note is that, while the Notice of Hearing did not issue until December 2, 2020 (*i.e.*, 50 days after the request), the Court emailed the parties and scheduled the status conference on November 17, 2020 (*i.e.*, 35 days after the request).[2] Moreover, Mr. Gallagher raised no objection to the date when it was proposed, nor did he ask for an earlier date.

Mr. Gallagher also attempts to cast aspersions on this Court for believing that Defendant's motion for bond was related to a separate email request for a medical evaluation. Defense counsel states repeatedly that the motion for bond made no mention of any medical condition, but rather "draws this Court's attention to the fact Mr. Schuster had been incarcerated pretrial for over five years (now seven years) and posits it would be fair and humane to permit him to return home pending resolution of his pretrial motions." (Doc. 86 at 7). To start, defense counsel's summation of the motion for bond

---

[2] And, to be clear, the only reason that the Court did not immediately schedule a status conference was because the case was (at that time) slated for random transfer to another judge.

3

is highly exaggerated. Indeed, the entirety of Defendant's motion for bond was less than half a page, double-spaced and, excluding the introductory and concluding sentences, stated merely as follows: "Mr. Schuster has been in custody for approximately four years since being arrested on these offenses. Mr. Schuster has strong family ties to this community. He can reside with his father if released. He can be placed on electronic monitoring to restrict his travel, track his movements and ensure court appearances when scheduled. He has been full [*sic*] vaccinated against COVID-19." (Doc. 71). More importantly, despite Mr. Gallagher's implications to the contrary, this Court never claimed that the motion for bond referenced medical issues. Rather, the Court acknowledged that it had mistakenly assumed the email request for Defendant to undergo a third-party medical evaluation (which the Court immediately authorized) was related to Defendant's contemporaneous motion for bond. (*See* Doc. 84 at 4, n. 1).

Mr. Gallagher also claims that it took this Court "100 months" to rule on Defendant's motion to dismiss. Given that Defendant has not even been incarcerated for 100 months, this calculation is clearly erroneous. Indeed, the Court's Order issued five months after briefing was completed on the first motion to dismiss (during which, time was tolled under the speedy trial clock by Defendant's motion to compel, and also this Court was in the midst of a very lengthy jury trial) and just <u>eleven days</u> after the second motion to dismiss was filed.

Mr. Gallagher also persists in arguing that there was no hinderance to the Court simply issuing decisions on other pending pretrial motions. But, as the Court explained in its prior Order, the Court was awaiting the outcome of cases before the Sixth Circuit

and the Court also intended to hold a hearing before issuing decisions. Thus, the motions were not ripe for decision. The fact that Mr. Gallagher claims a hearing was unnecessary is entirely irrelevant—the Court needed the hearing to fully understand the crux of Defendant's request.[3] Indeed, the hearing was intended to give Mr. Gallagher a further opportunity to fully explain why Defendant was entitled to the relief sought (a hurdle this Court does not believe was met on the written submissions alone).

Mr. Gallagher further attempts to undermine the Court's rational by claiming that the three Sixth Circuit cases the Court identified were irrelevant to the issue at hand. As an initial matter, the Court disagrees that the cases are entirely irrelevant. More importantly though, the Court could not have known <u>at the time</u> what the Sixth Circuit may or may not decide in the context of the three newly filed appellate cases. What the Court did know, as the Court explained its prior Order, was that, "[a]t and shortly after the time [Defendant's pretrial] motions were briefed, … there were cases pending before the Sixth Circuit, which cases involved suppression and *Franks* issues relating to the same NIT warrant at the heart of Defendant's pending motions." (Doc. 84 at 3). The Court further notes that while Mr. Gallagher now appears to make Agent Alfin the sole focus of the *Franks* motion and thereby differentiates Defendant's motion from the pending Sixth Circuit case, his original *Franks* motion only makes one off-hand reference

---

[3] At the time the motions were pending (specifically, on September 28, 2020), Mr. Gallagher emailed the Court and stated that he did not think a hearing was required for two of the motions, but concluded with: "I leave it to the Court to determine if an evidentiary hearing is required on the remaining motion." Thus, despite his apparent indignation now, Mr. Gallagher did acknowledge at the time that, at least one of the motions may need a hearing. Nevertheless, Mr. Gallagher's opinion is irrelevant to whether a hearing was actually required.

5

to Agent Alfin in a footnote (though Agent Alfin appears more prominently in the reply), while focusing entirely on the "affiant" of the warrant affidavit—Agent MacFarlane. (*See* Doc. 55). The Court would also note that, despite Mr. Gallagher's statement to the contrary, the Court did speak to him about awaiting pending appellate cases—albeit off the record—and received no objection.

Mr. Gallagher also disingenuously uses "over 54 months" as the length of time during which three of Defendant's four pretrial motions have been pending. However, the motions were not fully briefed until late-April 2019, and by December 2020, the Government and, most notably, Defendant, were in agreement that the three motions should be STAYED pending resolution of Defendant's motion to compel discovery. Further excluding the time that the Court could not schedule a hearing due to the pandemic, the period of time during which Defendant's motions were active and awaiting a hearing is 11 months (from April 2019 to March 2020), not 54.[4]

Finally, Mr. Gallagher goes on to state that, despite having denied the motion to dismiss, this Court still has not acted on the other pretrial motions. Mr. Gallagher fails to mention, however, that the Court reached out to counsel immediately after the Order issued on May 5, 2023, and the Court attempted to schedule a hearing on the pending motion to compel (which motion needed to be decided first). The only reason that the Court was unable to schedule the hearing was because Mr. Gallagher himself was

---

[4] Notably, if Mr. Gallagher genuinely believed that no hearing was required and that the motions were ripe for decision immediately upon briefing, then the Court questions why he would not have filed a motion to dismiss on speedy trial grounds after the clock allegedly ran (by his computation) in 2019.

6

unavailable for any of the dates proposed. And while the Court worked to propose a new date, counsel filed the instant motion for reconsideration.

Having addressed defense counsel's mischaracterizations and false statements, the Court can now focus on the true issue at hand—whether Defendant's motion to dismiss warrants reconsideration.

To start, the Court reiterates its conclusion in its prior Order that no violation under the Speedy Trial Act has occurred. (Doc. 84 at 7-9). Thus, the Court is left to consider whether its prior determination that there has been no Sixth Amendment violation is either erroneous or results in manifest injustice. In that regard, the Court finds no error in its application of law, but acknowledges one mistake of fact in the context of its prior analysis (specifically, under the third *Barker* factor). Thus, the Court feels compelled to reassess its Sixth Amendment analysis, accounting for this mistake. Beyond that, the Court's only remaining inquiry is as to whether—despite having applied the correct facts (with one minor exception) to the correct law—the outcome of the Court's analysis results in manifest injustice.

Rule 59(e) offers no definition of "manifest injustice," and therefore "courts instead look at the matter on a case-by-case basis," to determine whether "there exist a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy." *Curtis v. Hess Ohio Res. LLC*, No. 2:13-cv-453, 2015 WL 13021896, at *1 (S.D. Ohio Apr. 29, 2015) (quoting *Int'l Union United v. Bunting Bearings Corp.*, 321 B.R. 420, 423 (Bankr. N.D. Ohio

7

2004)). Here, the applicable policy and area of potential inequity is the Sixth Amendment's right to a speedy trial.

The right to a speedy trial under the Sixth Amendment serves a dual purpose: "In addition to the general concern that all accused persons be treated according to decent and fair procedures, there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused." *Barker v. Wingo*, 407 U.S. 514, 519 (1972). Thus, the right to a speedy is complex, in that it serves the often-incompatible interests of both the defendant and the public. "The amorphous quality of the right also leads to the unsatisfactorily severe remedy of dismissal of the indictment when the right has been deprived[;] … mean[ing] that a defendant who may be guilty of a serious crime will go free, without having been tried. … [B]ut it is the only possible remedy." *Id.* at 522.

The Supreme Court in *Barker* identified some of the concerns that the right to a speedy trial is intended to address. *Barker*, 407 U.S. at 519-22. Specifically, deprivation of a speedy trial creates unnecessary backlog in the courts, contributes to overcrowding at the local jails, increases costs relating to confinement or supervision, risks the loss or deterioration of evidence including witnesses' memories/testimony, negatively impacts the mental health of incarcerated defendants (as well as any victims of the offense, undoubtedly), and undermines the goals of rehabilitation. *Id*.

Having established this backdrop, the Court will now reconsider its prior analysis in weighing the *Barker* factors to determine whether a Sixth Amendment violation has occurred.

To determine whether Defendant has been deprived of his Sixth Amendment right to a speedy trial, the Court must consider: (1) the length of delay; (2) the reason for the delay; (3) Defendant's assertion of his right; and (4) prejudice to Defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). No one factor is a "necessary or sufficient condition to the finding of a deprivation of the right of speedy trial … [but] [r]ather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id*. at 533. "The proper remedy for a violation of a defendant's constitutional speedy-trial rights is dismissal of the indictment with prejudice." *United States v. Young*, 657 F.3d 408, 413 (6th Cir. 2011).

As to the **first** factor, the length of the delay serves as a "triggering mechanism" and, if the length is not "presumptively prejudicial," the Court is not required to undertake the remainder of *Barker* analysis. *Doggett v. United States*, 505 U.S. 647, 651-52 (1992); *Barker*, 407 U.S. at 530–31. "[B]ecause of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." *Barker*, 407 U.S. at 530. The Sixth Circuit has held "delays over one year are 'uncommonly long.'" *United States v. Baugh*, 605 F. App'x 488, 491 (6th Cir. 2015) (citing *United States v. Bass,* 460 F.3d 830, 836 (6th Cir. 2006)). However, "in calculating the length of the delay, only those periods of delay attributable to the government or the court are relevant to [Defendant's] constitutional claim." *United States v. Howard*, 218 F.3d 556, 564 (6th Cir. 2000).

Because such a delay exists here, the Court must undertake an analysis of the remaining *Barker* factors.

9

The **second** factor is reason for the delay. The United States Supreme Court has made clear that "different weights are to be assigned to different reasons for delay." *Doggett*, 505 U.S. at 657. At its core, this factor seeks to determine "whether the government or the criminal defendant is more to blame for th[e] delay." *Vermont v. Brillon*, 556 U.S. 81, 90 (2009) (quoting *Doggett*, 505 U.S. at 651);

As the Supreme Court explained in *Barker*:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531. Naturally, "delay caused by the defense weighs against the defendant," which includes delay attributable to defense counsel. *Brillon*, 556 U.S. at 90-91 (citing *Coleman v. Thompson,* 501 U.S. 722, 753 (1991)).

Here, the Court previously held that the vast majority of the time that has elapsed in this case is entirely attributable to Defendant, noting that "it is only the period of time spanning from February 2021 until the filing of Defendant's motions to dismiss that cannot be squarely placed on Defendant's shoulders." (Doc. 84 at 11). The Court further found that that this period of delay was neither the result of the Government's negligence, nor the bad faith of the Court. Accordingly, the Court weighed the factor only slightly in Defendant's favor. Upon reconsideration, however, the Court believes that greater weight is due to in favor of Defendant.

Specifically, while the Court reiterates that there was no bad faith on its part nor on the part of the Government, the period of time that elapsed was nevertheless a lengthy 18-months. During this time, the Court (and no doubt the parties) were still working to wade through the backlog created by the ongoing pandemic, while also attempting to address the swath of new incoming cases. And it was in this period of time that Defendant's motion went unheard. But the mere fact that the delay was unintentional should not minimize its impact.

Additionally, the Court's prior analysis laid blame entirely on Defendant for the time that elapsed from the date that Defendant's earlier pretrial motions were fully briefed (April 20, 2019) through the date on which the Court was asked to stay the motions for Defendant's impending motion for discovery (December 3, 2020). And as this Court has previously noted, the delay in hearing these motions was intended to await the outcome of pending Sixth Circuit cases. Thus, this delay was justified. Nevertheless, the Court acknowledges that it should have memorialized its rational on its docket, rather than merely conveying it informally; which may in turn have either given Defendant a <u>formal</u> opportunity to object, or it would have served to <u>definitively</u> secure Defendant's consent. Accordingly, in the interest of fairness to Defendant, the Court will give neutral weight to this period of delay.

Having reweighed these periods of delay, the Court finds the time elapsing from February 2021 through August 2022 (*i.e.*, when the motion to compel was briefed through the filing of the motion to dismiss) weighs firmly in Defendant's favor; and the time elapsing from April 2019 through December 2020 (*i.e.*, when the early pretrial

11

motions were briefed through the date on which the Court was asked to stay the motions for Defendant's impending motion for discovery) shall be given neutral weight.

The **third** factor is Defendant's assertion of his right. "Whether and how a defendant asserts his right is closely related to the other factors," in that "[t]he strength of [a defendant's] efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences." *Barker*, 407 U.S. at 531. Stated simply, "[t]he more serious the deprivation, the more likely a defendant is to complain." *Id*. Thus, the Supreme Court has "emphasize[d] that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id*. at 532.

Here, the Court's prior Order stated that "Defendant's only assertion of his right to a speedy trial arises from the filing of his motions to dismiss," and further noted that "quite the contrary to asserting his right to a speedy trial, Defendant has repeatedly caused further delays in these proceedings, contributing [to] the overwhelming majority of the time that has elapsed." (Doc. 84 at 12). Accordingly, the Court found that the third factor weighed against Defendant.

The Court admittedly erred, however, in not acknowledging that Defendant's motion for a status conference, filed on October 13, 2020, also raised the issue of Defendant's pending pretrial motions, thereby effectively serving to assert Defendant's speedy trial right. In light of this correction, the Court can no longer find that the third *Barker* factor weighs entirely against Defendant. That said, given how long Defendant waited to raise the issue for the first time, and given that, just seven weeks later,

12

Defendant would go on to request that the pending motions be stayed, the Court finds that this factor is neutral.

Finally, the **fourth** factor is any resulting prejudice to Defendant. In *Barker*, the Supreme Court explained that:

> Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect … [including]: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

*Barker*, 407 U.S. at 532.

Notably, "affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Doggett*, 505 U.S. at 656. The Sixth Circuit has elaborated, however, that "[i]n this circuit, '[w]hen the government prosecutes a case with reasonable diligence, a defendant who cannot demonstrate how his defense was prejudiced *with specificity* will not make out a speedy trial claim no matter how great the ensuing delay.'" *Young*, 657 F.3d at 418 (quoting *United States v. Howard,* 218 F.3d 556, 564 (6th Cir. 2000)) (emphasis in original); *see also United States v. Robinson*, 455 F.3d 602, 608 (6th Cir. 2006) (noting that, in the absence of particularized trial prejudice, "[s]horter delays [(*e.g.*, thirteen and one-half months versus six-years)] attributable to the government's negligence have been held not to give rise to a presumption of prejudice").

As to the "most serious" interest, Defendant maintains his prior argument that the death of Special Agent Daniel Alfin severely prejudices the defense, given that Agent

13

Alfin was the primary subject of Defendant's pending pretrial motions.[5] (Doc. 86 at 5-6; Doc. 76 at 15-16). However, the Court stands by its prior ruling in this regard. Agent Alfin was killed in the line of duty on February 2, 2021. Thus, Agent Alfin's death occurred <u>before</u> Defendant's motion to compel was even briefed. And, accordingly, Defendant cannot argue that the delay attributable to the Court (*i.e.*, the time elapsing after the motion to compel) contributed in any way to the loss of a witness. Indeed, Defendant himself agreed that the motion to compel discovery needed to be heard before the other pending motions (and therefore, certainly, before any trial could commence). Thus, the only delay that led up to Agent Alfin's death was the years of delay caused by Defendant, not the Court and certainly not the Government.

      Defendant further reiterates non-trial prejudice arising from his continued incarceration. As the Court previously acknowledged, "[p]retrial detention is a significant deprivation to any defendant … [and] the Court agrees the delay has contributed to Defendant's non-trial prejudice." (Doc. 84 at 14). The Court also noted, however, that "non-trial prejudice carries less weight than trial prejudice," and therefore the Court found that the fourth factor weighed neither in favor of nor against either party. (*Id.*) And while it is true that non-trial prejudice does weight less heavily, the Court, on

---

[5] The Court would note that if, as defense counsel now suggests, no hearing was required on any of Defendant's pretrial motions, then certainly Agent Alfin's death could not serve to prejudice the defense (unless the Court ultimately agreed to hold a *Franks* hearing). Thus, Defendant either defeats his own argument as to prejudice or, alternatively, he defeats his own argument that the pretrial motions were ripe for decision all along. Nevertheless, the Court intended to hold oral argument and not necessarily an evidentiary hearing; and so Agent Alfin's death does not change the Court's analysis of the fourth *Barker* factor.

14

reconsideration, feels compelled to consider the reality that the delay in Defendant's period of incarceration occurred during the height of the COVID-19 pandemic. And, for some, this reality greatly increased the mental and emotional toll of pretrial incarceration. Indeed, as noted in Defendant's motion for bond, Defendant elected to receive his COVID-19 vaccinations while in the local jail, which—in this Court's experience—was highly uncommon among detained defendants. To this Court, Defendant's election to get vaccinated conveys that Defendant was highly cautious of and concerned for his health, which in turn means that his period of detention during the pandemic was likely all the more stressful for him. Accordingly, the Court finds that, under the circumstances of this specific case, the fourth *Barker* factor should weigh slightly in Defendant's favor.

### IV. CONCLUSION

In sum, the Court finds that reconsideration of its prior Order denying dismissal (Doc. 84) is appropriate, in order to correct a mistake of fact and to avoid manifest injustice. And, having reconsidered each of the *Barker* factors, the Court finds the delay has deprived Defendant of his constitutional right to a speedy trial. Accordingly, dismissal under the Sixth Amendment is warranted.

Based upon the foregoing, Defendant's motion for reconsideration (Doc. 86) is **GRANTED**. Accordingly, the case shall be **DISMISSED with prejudice** and Defendant shall be released from custody forthwith.

**IT IS SO ORDERED.**

Date: 9/15/2023

Timothy S. Black
United States District Judge